JONES, Justice:
The appellant was drilling for oil under contract with Humble Oil and Refining Company. The drilling was in Wayne County, Mississippi. O. H. Adams was an employee of appellant. G. T. Robinett was employed by Humble as an engineer.
Appellee was employed by Lamb Rental Tools Company, a corporation.
This suit.was filed in the Chancery Court of Jones County by attachment of certain realty there situated and owned by Humble, a foreign corporation.
Appellee was complainant and Humble, Young, Adams and Robinett were defendants.
*878 The suit was for damages because of personal injuries allegedly received by appellant, as a result of the negligence of the named defendants. At the conclusion of ap-pellee’s proof the court sustained a motion to exclude as to Humble and Robinett. There is no appeal therefrom.
At the conclusion of all evidence the lower court entered judgment in favor of ap-pellee against appellant and Adams. There is no appeal as to Adams. The amount of the judgment was $22,250.
We affirm as to liability, but reverse for a new trial on the question of damages only, if the remittitur hereinafter suggested is not entered.
Appellant contracted with Lamb, appel-lee’s employer, to set casing in the well being drilled as aforesaid.
Appellee worked as a “pipe stabber.” He stood on a board a considerable distance above the floor of the derrick. Sections of the casing were joined and held together by the lower end of the upper section being screwed into the top of the section below which was lowered into the hole and held in place (the top being a few feet above the derrick floor) by an appliance known as a “spider.” The sections to be attached were suspended above the hole and near the “stabber” after having been raised by a line attached to a traveling block, the latter operated by power from an engine. Adams, employee of appellant, operated this engine.
The lower end of the suspended joint is guided by others into the collar of the joint held in place near the top of the hole, and when tongs are attached, it is screwed into the said collar.
After the tongs are attached, the line fastened to the suspended joint is released and the operator, without signal, lowers the traveling block. At the bottom of the traveling block there is an “elevator” which opens and closes and is latched by the “stabber” around the suspended joint below its collar. After the tongsmen make the connection, the pipe is lowered into the hole. When the elevator is released, the pipe is held by the spider.
It was undisputed that the usual and customary method of operation was as aforesaid, that is, the elevator was not lowered until the tongs were attached. There was a conflict of evidence as to whether the tongs had been attached when Adams lowered the elevator. Appellee’s proof was that they had not; the appellant’s proof was that they had. In his opinion, the chancellor said:
“The Court finds from the evidence that at the time of the accident, O. H. Adams, Defendant and driller for Marshall R. Young Drilling Company, was in charge of the well drilling machinery. That surface casing was being set at the time of the accident, as required in the drilling of the well. That at the time of the injury to complainant, Jimmie Harrison, O. H. Adams was operating the machinery which furnished the power for raising and lowering the elevator with which the casing was being lowered into the well. In operating this machine, O. H. Adams was standing by the machine which was situated on the ground floor of the drilling rig. O. H. Adams had a plain view of Complainant, Jimmie Harrison, who was standing on a ten=inch board resting on the framework of the rig, thirty or thirty-five feet above the ground floor, holding the upper end of a joint of casing which was being conditioned to lower into the well. While Complainant was thus situated, Defendant, O. H. Adams, lowered the elevator down on Complainant. The evidence shows that the elevator weighed several hundred^ pounds. The Court finds that O. H. Adams, the Defendant, was negligent in so doing, which negligence proximately caused rather serious injury to Complainant’s left hand.”
Appellant argues that after the accident the top pipe was standing erect and this proved appellee’s version was impossible— *879 that the tongs were bound to have been attached as its evidence indicated or it would have fallen. However, there was a conflict here — appellee’s proof being that the pipe fell over against the derrick.
We cannot say the chancellor was manifestly wrong in finding liability against appellant.
The injuries sustained by appellee were to his left hand.
The doctor testified that he had a compound fracture of the middle finger and deep lacerations of the palmar surface of the index, ring, and middle fingers. No finger, or part thereof, was completely severed when first seen by the doctor. The lacerations mentioned went to the bone and tendons of the flexure surface of his hand. Some of the tendons and nerves had been severed. No major flexion tendon was severed and he could still flex his fingers. After several weeks of efforts to save the finger, a portion of the middle finger was amputated when its function failed to return.
The accident occurred on February 17, 1962. The case was begun November 2, 1964. The doctor testified November 3, 1964, and last saw appellee the previous day. He thought maximum recovery had been achieved and that there was a permanent 10 to 15 percent limitation of motion from flexion on the index and ring fingers, one on each side of that partially amputated. He cannot tightly close his fingers, and there is a weakness in the hand. The doctor does not believe he will be able to work effectively as a stabber, since his hand is weak and it would be dangerous to others •on the derrick.
Appellee testified that he had averaged $125 to $150 per week as a stabber, that he earned $6800 the year before and the following year made $1900. He testified that the stabber’s job paid more than the ordinary job on the derrick and that he had tried to work as a stabber for Lamb and others for a few months but couldn’t hold the job.
Jacob Stennett, a “stabber” of experience, considered appellee a good stabber before the accident, but thought it dangerous to others now to use him. Jerry Mayberry, Lamb’s “pusher,”. thought appellee competent as a stabber before the accident, but didn’t think appellee now had the necessary strength and therefore said he couldn’t carry him as a “stabber.”
Plaintiff testified without contradiction that the pay of a “stabber” was $3.00 per hour, but by his injury his earning capacity had been reduced to $1.96 per hour, the pay for less dangerous work on the rig.
On this proof the chancellor fixed damages at $22,250. Reluctant as we are to reverse, we are driven to the conclusion that the chancellor was manifestly wrong in fixing recovery at so large an amount and that same is grossly excessive and makes necessary a new trial on that issue alone unless appellee will enter a remittitur of $5,000 making the recovery $17,250, in which event the case will be affirmed. Such entry of remittitur, if made, shall be within thirty (30) days after judgment of this Court becomes final.
Affirmed conditioned upon entry of re-mittitur; otherwise reversed and remanded for a new trial on issue of damages alone.
Affirmed if remittitur of $5,000 is made within thirty days after judgment of this Court becomes final; otherwise reversed and remanded for new trial on issue of damages alone.
ETHRIDGE, C. J., and BRADY, IN-ZER and ROBERTSON, JJ., concur.